IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 24-cv-01673-NYW-CYC

AMERICAN ECONOMY INSURANCE COMPANY,

    Plaintiff/Counterclaim Defendant,

v.

SCOTT SEPIC,
PAGE SEPIC, and
VESTA DENVER, LLC,

    Defendants/Counterclaim Plaintiffs.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on The Sepic Defendants' Motion for Partial Summary Judgment (the "Motion" or "Motion for Partial Summary Judgment") filed on December 24, 2024. [Doc. 38]. The Court has reviewed the Motion and concludes that oral argument would not materially assist in its resolution. As set forth below, the Motion for Partial Summary Judgment is respectfully **GRANTED in part** and **DENIED in part**.

## BACKGROUND

In 2023, Plaintiff American Economy Insurance Company ("Plaintiff" or "American Economy") issued a homeowners' insurance policy to Scott Sepic, Page Sepic, and Vesta Denver, LLC (collectively, "Defendants"). [Doc. 1 at ¶ 11]. After a fire, Mr. and Ms. Sepic "demanded [insurance] coverage from Plaintiff." [*Id.* at ¶¶ 36, 39]. American Economy denies that coverage exists, so it filed this declaratory judgment suit on June 14, 2024, seeking a declaration that no coverage is available under the subject insurance policy.

[*Id.* at ¶¶ 45–47].[1]  Defendants then asserted counterclaims for breach of contract, bad faith breach of an insurance contract, and unreasonable delay or denial of insurance benefits.  [Doc. 15 at ¶¶ 92–109].

Defendants filed their Motion for Partial Summary Judgment in the early stages of discovery, seeking summary judgment in their favor on American Economy's declaratory judgment claim and on a number of American Economy's affirmative defenses against their counterclaims.  [Doc. 38].  Discovery closed on August 15, 2025, [Doc. 63], and dispositive motions are due October 15, 2025, [Doc. 64].  The Motion for Partial Summary Judgment is fully briefed and ripe for review, [Doc. 46; Doc. 53], and the Court considers it below.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (cleaned up).

At summary judgment, a movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

---

[1] Plaintiff also named Wells Fargo Bank, N.A., as a Defendant, *see* [Doc. 1 at 1], but voluntarily dismissed its claim against Wells Fargo on March 12, 2025, *see* [Doc. 54].

Once this movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court views the record in the light most favorable to the nonmoving party. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

## UNDISPUTED MATERIAL FACTS

The following undisputed material facts are drawn from the summary judgment record:

1. In 2019, American Economy issued a homeowners' insurance policy (the "Policy") listing 3500 Belcaro Drive, Denver, Colorado 80209 as the insured location. [Doc. 38 at ¶ 6; Doc. 46 at 5 ¶ 6; Doc. 1-1 at 11].

2. The Policy was renewed in 2020, 2021, 2022, and 2023. [Doc. 38 at ¶ 12; Doc. 46 at 6 ¶ 12; Doc. 1 at ¶ 21, Doc. 15 at ¶ 21].

3. The dwelling located at 3500 Belcaro Drive (the "Belcaro Drive Home") was demolished in 2020 so that a new home could be constructed. [Doc. 38 at ¶ 14; Doc. 46 at 6 ¶ 14; Doc. 38-3 at ¶ 12].

4. In 2021, the City and County of Denver retired the 3500 Belcaro Drive address and changed the property address to 800 S. Madison Street, due at least in part

3

to the front door placement of the new home (the "Madison Street Home"). [Doc. 38 at ¶¶ 15–16; Doc. 46 at 6 ¶¶ 15–16; Doc. 38-6; Doc. 38-7].[2]

5. On December 30, 2023, the Madison Street Home was damaged in a fire during construction. [Doc. 38 at ¶¶ 19, 40; Doc. 46 at 7, 11 ¶¶ 19, 40; Doc. 38-3 at ¶ 16].

6. At the time of the fire, the Policy stated that it "cover[ed] accidental direct physical loss to property described in **Building Property We Cover** except as limited or excluded." [Doc. 38 at ¶ 26; Doc. 46 at 8 ¶ 26; Doc. 1-1 at 32].

7. Under the Policy, "Building Property We Cover" includes:

   1. the dwelling on the *residence premises* shown in your Policy Declarations used principally as a private residence, including structures attached to the dwelling other than fences, driveways or walkways;

   2. attached carpeting, built-in appliances, fixtures; and

   3. materials and supplies located on or next to the *residence premises* used to construct, alter or repair the dwelling or other structures on the *residence premises*.

[Doc. 38 at ¶ 30; Doc. 46 at 8 ¶ 30; Doc. 1-1 at 32].

8. "Residence premises" is defined in the Policy as

   (1) the one, two, three or four family dwelling, used principally as a private residence;

   (2) other structures and grounds; or

   (3) that part of any other building;

   where you reside and which is shown in your Policy Declarations.

[Doc. 38 at ¶ 31; Doc. 46 at 8 ¶ 31; Doc. 1-1 at 31].

---

[2] While Plaintiff disputes many aspects about the changed address, Plaintiff does not dispute that the address was changed and that the change was due, at least in part, to the relocation of the front door. [Doc. 46 at 6 ¶¶ 15–16].

4

9. American Economy denied all coverage for the loss on the basis that the property insured under the Policy was "the 4,381 square-foot single-story residence located at 3500 Belcaro Drive," not the Madison Street Home. [Doc. 38 at ¶¶ 44, 46; Doc. 46 at 11–12 ¶¶ 44, 46; Doc. 38-12 at 5].

## ANALYSIS

Defendants move for summary judgment in their favor on Plaintiff's declaratory judgment claim, arguing that the Court should rule as a matter of law that they are entitled to coverage under the Policy. [Doc. 38 at 13–17]. They also move for judgment in their favor on Plaintiff's third, fourth, fifth, seventh, and eighth affirmative defenses that are asserted against Defendants' counterclaims. [*Id.* at 17–19].

**I.   Plaintiff's Claim for Declaratory Judgment**

Defendants raise a number of arguments in support of their request for judgment on Plaintiff's declaratory judgment claim: (1) the Policy does not expressly limit coverage to a one-story home of 4,381 square feet, [Doc. 38 at 14]; (2) the Policy covers accidental damage, and the December 2023 fire was accidental, [*id.* at 14–15]; (3) the Policy covers the Madison Street Home because it amounts to "materials and supplies located on or next to the residence premises used to construct, alter or repair the dwelling or other structures on the residence premises," [*id.* at 15 (emphasis omitted)]; (4) the Madison Street Home falls within the Policy's definition of "residence premises," [*id.* at 15–16]; and (5) the Policy Declarations list "3500 Belcaro Drive" as an "Insured Location," [*id.* at 16]. They also contend that "[a]t a minimum, [Defendants'] interpretation of the [P]olicy is reasonable from the viewpoint of an ordinary insured," and any ambiguity should be construed in their favor. [*Id.* at 17].

5

Plaintiff disputes all of these assertions. It argues that Defendants have failed to conclusively establish coverage under the Policy, so the Motion for Partial Summary Judgment should be denied. [Doc. 46 at 16]. It contends that (1) the Policy was issued for the Belcaro Drive Home, not the Madison Street Home, [*id.* at 16–17]; (2) Defendants failed to comply with the Policy and failed to inform Plaintiff of any change in title, use, or occupancy of the insured property, [*id.*]; (3) whether the fire was accidental is irrelevant to the issue of whether the Madison Street Home is covered by the Policy, [*id.* at 17–18]; and (4) Defendants' construction of the Policy, including the insuring provisions and the definition of "residence premises," is contrary to the Policy's plain language, [*id.* at 18–20]. It also contends that "there are disputed facts which preclude summary judgment." [*Id.* at 21–22].

The Court has reviewed the Policy, the Parties' arguments, and the Parties' submitted evidence. The Court finds that summary judgment is not appropriate at this time due to the existence of genuine disputes of material fact, including but not limited to whether Defendants complied with the Policy's requirement to inform American Economy of any changes to the title, use, or occupancy of the residence premises.[3]

As is pertinent here, the Policy provides:

> In reliance on the information you have given us, we will pay claims and provide coverage as described in this policy if you pay your premiums when due, comply with all applicable provisions outlined in this policy, and inform us of any change in title, use, or occupancy of the residence premises.

---

[3] In so holding, the Court does not make any legal rulings about the Policy's definition of "residence premises" or whether the Belcaro Drive Home or the Madison Street Home fall within the meaning of "residence premises."

6

[Doc. 1-1 at 29 (emphasis added)].  Defendants claim that they complied with this provision by informing Colorado Insurance, "American Economy's representative," that they planned to demolish the Belcaro Drive Home and build a new one.  *See* [Doc. 38 at ¶¶ 1–4; Doc. 53 at 5 ¶ 10; Doc. 38-2 at 1 (email dated November 6, 2019)].  They claim that American Economy's internal notes show its knowledge of Defendants' plan to rebuild.  [Doc. 38 at ¶ 5; Doc. 39 at 1].

American Economy, however, disputes that the email Defendants rely on was ever sent to Colorado Insurance.  [Doc. 46 at ¶ 1]; *see also* [46-1 at ¶ 5 (defense counsel stating in an affidavit that she requested a "complete copy of [Colorado Insurance's] files" for the Belcaro Drive Home and the Madison Street Home and Colorado Insurance's production did not include this email)]; *but see* [Doc. 53-2 at 3 (Defendants' Exhibit 15 showing that Colorado Insurance responded to Mr. Sepic's November 6, 2019 email)].  Moreover, American Economy argues that even if Mr. Sepic did send this email, Mr. Sepic later repudiated this representation by telling Colorado Insurance on November 14, 2019 that Defendants were "[l]eaning towards renting out the house," [Doc. 46-5 at 1], and later stating on December 6, 2019 that Defendants had "decided to not rent the property" and would "move in at some point soon," [Doc. 46-7 at 1]; *see also* [Doc. 46 at 12–13 ¶¶ 2, 5].  Plaintiff also claims that "[a]fter December 9, 2019, Defendants never notified American Economy that" they demolished the Belcaro Drive Home or began constructing the Madison Street Home.  [Doc. 46 at 14 ¶¶ 10–11].  Defendants dispute this, [Doc. 53 at 5 ¶¶ 10–11], and assert that "American Economy has produced no evidence that there was a change in the use, title, or occupancy of the home" because "American Economy insured the dwelling as a secondary residence" and "[t]he Sepics were clear with

7

American Economy's representative [in November 2019] that they would be tearing the home down and rebuilding," [*id.* at 8].  Defendants do not address Mr. Sepic's December 2019 email to Colorado Insurance.  *See* [*id.*].

American Economy has adduced sufficient evidence to create a genuine dispute of material fact as to whether Defendants complied with their requirement to alert Plaintiff about any change in use, title, or occupancy of the home.  Specifically, it has submitted evidence that in December 2019, Mr. Sepic informed American Economy, through Colorado Insurance, that the Sepics would be moving into the Belcaro Drive Home "at some point soon," but that the Sepics did not move in and instead demolished the home and began constructing another.  This is enough to permit a jury to conclude that Defendants did not comply with the Policy's requirements.  Accordingly, Defendants have not met their high burden at summary judgment to establish that they are entitled to judgment as a matter of law.  Defendants' Motion for Partial Summary Judgment is respectfully **DENIED** with respect to Plaintiff's declaratory judgment claim.[4]

## II.    Plaintiff's Affirmative Defenses to Counterclaims

Defendants also move for summary judgment in their favor on Plaintiff's third, fourth, fifth, seventh, and eighth affirmative defenses to Defendants' counterclaims. [Doc. 38 at 17–19].  Plaintiff argues generally that Defendants' request is "premature and fails" and that "[a]t the conclusion of discovery, Plaintiff will withdraw any affirmative defenses that do not apply."  [Doc. 46 at 22].  Discovery closed on August 15, 2025, [Doc. 63 at 1],

---

[4] Having concluded that summary judgment in Defendants' favor on the declaratory judgment claim is not appropriate, the Court need not and does not address any other potential disputes of fact that could preclude summary judgment.

and Plaintiff has not formally withdrawn any of its affirmative defenses.[5]  Accordingly, the Court considers the Parties' arguments below.

### A.     Third Affirmative Defense

Plaintiff's third affirmative defense states:  "Defendants' Counterclaims may be barred, in whole or in part, due to the comparative fault of Defendants or their representatives."  [Doc. 20 at 20].  Defendants seek summary judgment on this affirmative defense because "[c]omparative fault isn't a defense to a breach of contract claim, no Colorado case has applied the doctrine to an insurance bad faith claim, and no Colorado pattern jury instruction recognizes the defense with respect to anything other than a negligence claim."  [Doc. 38 at 17].  Plaintiff responds that it "did not assert comparative fault based on Defendants' breach of contract claim" and that "[a] comparative bad faith defense has been asserted by insurers in bad faith litigation in Colorado."  [Doc. 46 at 22 (citing *Carroll v. Allstate Fire & Cas. Ins. Co.*, No. 12-cv-00007-WJM-KLM, 2013 WL 5769308 (D. Colo. Oct. 24, 2013))].  Defendants respond that the *Carroll* case actually "rejected th[is] defense" and that Plaintiff cannot "identify a single case, pattern jury instruction, or other authority allowing an insurer to assert a "comparative fault" defense in an insurance case."  [Doc. 53 at 13].

*Carroll* did not substantively accept or reject the insurer's attempt to assert a comparative fault affirmative defense in the bad faith context.  Instead, the *Carroll* court found the issue moot due to the insurer's failure to identify any affirmative experts.  *See*

---

[5] Plaintiff did not move for relief under Rule 56(d), which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to summary judgment], the court may" defer ruling on the motion or deny the motion.  Fed. R. Civ. P. 56(d)(1)–(2).

2013 WL 5769308, at *2.  The fact that the *Carroll* court "struck a comparative bad faith defense not because it was improper, but because it was not supported by expert testimony," [Doc. 46 at 22], does not imply that the defense is proper in the bad faith context.  *Carroll* thus does not lend any support to Plaintiff's argument.

Traditionally, comparative fault defenses are recognized in the tort context and limit a defendant's liability based on the plaintiff's own negligence.  *Dickinson v. Lincoln Bldg. Corp.*, 378 P.3d 797, 804 (Colo. App. 2015); Colo. Jury Instr., Civil 9:23.  This Court could locate no Colorado case permitting an insurance company to assert this type of defense against an insured's bad faith claims.  The Court declines to recognize the availability of this defense for Colorado bad faith claims in the first instance.  Moreover, courts in other jurisdictions have rejected the availability of this defense in the insurance bad faith context.  *See Kransco v. Am. Empire Surplus Lines Ins. Co.*, 2 P.3d 1, 12 (Cal. 2000); *First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.*, 928 P.2d 298, 308 (Okla. 1996); *see also* Litig. & Prev. Ins. Bad Faith § 11:16 (3rd ed. July 2025 update) (stating that a comparative fault defense to bad faith claims is recognized "in at most one or two jurisdictions in the United States at this time" (emphasis omitted)).

As the party asserting the affirmative defense, Plaintiff bears the burden of demonstrating the applicability of the defense in this context.  Plaintiff has not done so here.  Accordingly, the Motion for Partial Summary Judgment is **GRANTED** with respect to Plaintiff's third affirmative defense.

B.   **Fourth Affirmative Defense**

Plaintiff's fourth affirmative defense asserts that "Defendants' Counterclaims may be barred, in whole or in part, due to Defendants' failure to mitigate their damages, if any."

[Doc. 20 at 20]. With respect to this defense, Defendants assert that it is "undisputed that American Economy denied all coverage and sued its insureds such that it cannot insist on any policy provision requiring the Sepics to mitigate their damages as a condition of coverage," relying on *Coors v. Security Life of Denver Insurance Co.*, 112 P.3d 59, 64 (Colo. 2005). [Doc. 38 at 18]. In *Coors*, the Colorado Supreme Court held that "a party to a contract cannot claim its benefit where he is the first to violate its terms." 112 P.3d at 64. Defendants also argue that "American Economy cannot produce any evidence that the Sepics failed to mitigate their damages." [Doc. 38 at 18]. Plaintiff responds that *Coors* is inapplicable to this case because "Defendants have not proved coverage is owed, and have not proved Plaintiff breached the contract or that any amounts are due, much less that Plaintiff breached the contract first." [Doc. 46 at 23]. It also asserts that "Defendants fail to even identify the damages they seek much less show an absence of evidence to support Plaintiff's failure to mitigate affirmative defense." [*Id.*].

The Court agrees with Plaintiff that Defendants have not shown they are entitled to summary judgment on this affirmative defense pursuant to *Coors*. However, Plaintiff's other argument misstates the burden at summary judgment. Where the movant does not bear the ultimate burden at trial, the movant need only "point[] out a lack of evidence to support an essential element of that" affirmative defense. *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018) (quotation omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denv.*, 36 F.3d 1513, 1518 (10th Cir. 1994). To meet this burden, "the nonmovant [must] go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of

11

trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (quotation omitted).

Here, Plaintiff does not make any attempt to identify any manner in which Defendants failed to mitigate their damages, let alone cite evidence in support. *See* [Doc. 46]. And while the Court acknowledges that the Motion for Partial Summary Judgment was filed at the early stages of discovery, Plaintiff did not move for relief under Rule 56(d), seek to supplement its Response based on any newly discovered fact after the close of discovery on August 15, 2025, [Doc. 63], and its cursory argument that Defendants' Motion is "premature" is insufficient to preclude summary judgment, *see Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1264 (10th Cir. 2020) (where nonmovant "failed to invoke Rule 56(d) at its peril," affirming district court's decision "granting summary judgment based on the evidence and arguments presented to it by both parties"). Accordingly, the Motion for Partial Summary Judgment is respectfully **GRANTED** as to the fourth affirmative defense. *See Lodestar Anstalt v. Route 66 Junkyard Brewery LLC*, No. 17-cv-00062-JCH-JHR, 2019 WL 231755, at *16 (D.N.M. Jan. 16, 2019) (granting summary judgment in the plaintiff's favor on the defendants' affirmative defenses because the defendants "completely failed to respond with facts, arguments, and law to protect and prove [the] defenses even though it was their burden to do so"); *Mason v. Brigham Young Univ.*, No. 2:06-cv-00826-TS, 2008 WL 312953, at *1 (D. Utah Feb. 1, 2008) (where defendant did not submit any evidence of failure to mitigate, granting summary judgment in plaintiff's favor on failure-to-mitigate defense).

### C. Fifth Affirmative Defense

In Plaintiff's fifth affirmative defense, it states that "Defendants' Counterclaims claims [sic] may be barred, in whole or in part, due to the acts or omissions of third parties over whom Plaintiff maintains no control or right of control." [Doc. 20 at 20]. Defendants seek summary judgment on this affirmative defense on the basis that Plaintiff failed to designate any non-parties at fault by the 90-day deadline imposed by Colo. Rev. Stat. § 13-21-111.5(3)(b). [Doc. 38 at 18]. Plaintiff counters that § 13-21-111.5 does not apply here because "this is a causation defense which is not equivalent to a non-party defense, and is a complete defense if successful." [Doc. 46 at 23]. According to Plaintiff, it does not assert a defense of non-parties at fault, so "non-party designations are not required." [*Id.*].

"[A] defendant may always attempt to interpose a complete defense that his acts or omissions were not the cause of the plaintiff's injuries." *Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 81 (Colo. 2001). "A defense that the defendant did not cause the plaintiff's injuries is not equivalent to the designation of a non-party because it cannot result in apportionment of liability, but rather is a complete defense if successful." *Id.* "[A] non-party designation is reserved for individuals or entities who might themselves be at fault and therefore liable for the injury at issue." *Id.*

Based on Plaintiff's representation that it does not attempt to assert a non-party-at-fault defense and instead attempts to assert a lack-of-causation defense, which is "always" available, *see id.*, the Court will deny summary judgment on this affirmative defense given the limited scope of Defendants' argument. However, Plaintiff will be held to its representation at trial and will not be permitted to assert a non-party-at-fault defense.

13

### D. Seventh Affirmative Defense

Plaintiff's seventh affirmative defense asserts that "Defendants' Counterclaims may be barred, in whole or in part, by the doctrine of unclean hands." [Doc. 20 at 20]. Defendants seek summary judgment in their favor on this defense because the doctrine of unclean hands is only applicable to equitable claims, and their breach of contract and bad faith claims do not sound in equity. [Doc. 38 at 18–19]. Plaintiff counters that Defendants' reliance on the "reasonable expectations" doctrine on in their Motion for Partial Summary Judgment "is an equitable argument." [Doc. 46 at 23–24]. Though unclear, the Court construes this as an assertion that the defense of unclean hands is available as a defense against Defendants' claims for money damages because Defendants raise an "equitable argument" in their Motion for Partial Summary Judgment. Plaintiff's assertion is not supported by any legal authority permitting an unclean hands defense against a claim for damages. See [id.]. In their Reply, Defendants state that "[n]owhere . . . have the Sepics ever asserted that the reasonable expectations doctrine applies." [Doc. 53 at 14].

The Court agrees with Defendants that they do not expressly raise the "reasonable expectations" doctrine in their Motion for Partial Summary Judgment. See [Doc. 38]; see also Bailey v. Lincoln Gen. Ins. Co., 255 P.3d 1039, 1048–49 (Colo. 2011) (explaining the reasonable expectations doctrine). And because this is the only basis for Plaintiff's opposition to summary judgment, the Court need not decide whether the assertion of an "equitable argument" in a dispositive motion triggers application of an equitable defense. The Court notes, however, that it could locate no Colorado case finding that an unclean

14

hands defense is available in the insurance context where Defendants do not seek equitable relief, but monetary relief.[6]

Because Plaintiff has not demonstrated that the doctrine of unclean hands is applicable in this case, the Motion for Partial Summary Judgment is **GRANTED** with respect to Plaintiff's seventh affirmative defense.

### E.   Eighth Affirmative Defense

Plaintiff's eighth affirmative defense states: "Defendants' Counterclaims may be barred, in whole or in part, because Plaintiff did not insure the 800 S. Madison Street property and would not have done so if Defendants had requested such coverage." [Doc. 20 at 20]. The Court declines to enter summary judgment on this affirmative defense, which reflects the very crux of this case: whether the damage to the Madison Street Home is a covered loss under the Policy. Indeed, the disputes of fact identified above preclude summary judgment on this issue. The Motion for Partial Summary Judgment is **DENIED** with respect to this affirmative defense.

## CONCLUSION

For the reasons set forth in this Order, **IT IS ORDERED** that:

(1) The Sepic Defendants' Motion for Partial Summary Judgment [Doc. 38] is

   **GRANTED in part** and **DENIED in part**;

---

[6] "In Colorado, the clean hands maxim dictates that one who has engaged in improper conduct regarding the subject matter of the cause of action may, as a result, lose entitlement to an equitable remedy." *Salzman v. Bachrach*, 996 P.2d 1263, 1269 (Colo. 2000). "The doctrine of unclean hands *is an equitable defense* to proceedings in equity and is premised on the theory that *one who requests equity* must do so with clean hands." *Colo. Korean Ass'n v. Korean Senior Ass'n of Colo.*, 151 P.3d 626, 629 (Colo. App. 2006) (emphasis added).

15

(2) The Motion is **GRANTED** to the extent it seeks judgment in Defendants' favor on Plaintiff's third, fourth, and seventh affirmative defenses; and

(3) The Motion is **DENIED** to the extent it seeks judgment on the declaratory judgment claim and Plaintiff's fifth and eighth affirmative defenses.

DATED: September 25, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge